United States District Court
Southern District of Texas
ENTERED
July 03, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: THE COMPLAINT AND PETITION OF HOUSTON FLEETING SERVICES LLC, AS OWNER OF THE VESSEL, M/V MISS PEGGY, ITS ENGINE, TACKLES, ETC., IN THE CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § | Case No. 4:24-CV-02705 c/w 4:24-CV-2855; 4:24-CV-02739; and 4:24-CV-02759 |

**JUDGE PALERMO'S**
**REPORT AND RECOMMENDATION**[1]

Before the Court is Petitioner Houston Fleeting Services, LLC's ("HFS") motion for summary judgment, seeking dismissal of Petitioner Ladon Shipping Pte. Ltd.'s limitation of liability proceeding related to the collision of the M/V YANGZE 7 with the M/V MISS PEGGY on July 19, 2024. ECF No. 167. HFS argues that because the YANGZE 7 violated Inland Rule 5—33 C.F.R. § 83.05—the *Pennsylvania* Rule's presumption applies and as a result, exoneration and limitation are unavailable to Ladon. ECF No. 167 at 13. Ladon responds that HFS's argument hinges on alleged violations of Ladon's Ship Operation Manual ("SOM") and not violations of Inland Rule 5, so the *Pennsylvania* Rule is inapplicable and further, this evidentiary presumption should not be applied to a fulsome evidentiary

[1] The district judge to whom this case is assigned referred this case for all pretrial proceedings. Order of Referral, ECF No. 16.

record. ECF No. 168.[2] Finding the *Pennsylvania* Rule should not be applied at this stage of proceedings, the Court recommends that HFS's motion for summary judgment be denied and this case proceed to trial. ECF No. 167.

## I. BACKGROUND

On July 19, 2024, in the Houston Ship Channel, the M/V YANGZE 7, a bulk carrier, transited inbound while the MISS PEGGY, a tug boat, also transited inbound in front of the YANGZE 7. The YANGZE 7 collided with the MISS PEGGY, which capsized and sunk. As a result of the collision, a seaman working on the MISS PEGGY died and other crew members were injured. Ladon, owner of the M/V YANGZE 7, and HFS, owner of the M/V MISS PEGGY, filed suit for exoneration from or limitation of liability. Claimants have pending claims.

On the date of the incident, the YANGZE 7 was required to comply with the policies and procedures published in the SOM, which included various lookout requirements. *See, e.g.* ECF No. 167-1 at 6 ("When approaching anchorage areas and port limits, Master, and at least a Deck Officer, a helmsman and a look-out shall be present on the bridge and one Deck Officer together with Bosun and/or Carpenter shall be stationed at the bow."); 9–13 ("Every ship shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation

---

[2] HFS also filed a reply. ECF No. 169.

and avoid the risk of collision, stranding and other hazards to navigation. . . ."), 16–17 (bridge manning plan examples), 25–26 ("The look-out shall be stationed at the Bridge wings."). The YANGZE 7 Captain signed the Pilotage Checklist for Arrival to Houston on July 19, 2024, which contained the checked-off item: "Bridge appropriately manned to: Maintain a proper look-out." ECF No. 167-1 at 29–40.

HFS has moved for summary judgment against Ladon, arguing that Ladon's limitation action should be dismissed because Ladon's failure to follow the SOM's lookout requirements violated Inland Rule 5, and so applying the *Pennsylvania* Rule's presumption, this violation was a contributing cause to the incident and made within Ladon's privity and knowledge. In support of the motion, HFS attaches: (1) Declaration of Elizabeth A. Strunk; (2) the SOM; (3) the YANGZE 7's arrival checklists; (4) excerpts from the YANGZE 7's Deck Logbook; (5) Ladon's Answers to HFS's First Interrogatories; (6) excerpts from YANGZE 7 Captain Tao Liu's deposition, in which Liu invokes the Fifth Amendment; (7) excerpts from the Eighth Edition of Farwell's Rules of the Nautical Road by Craig H. Allen. ECF No. 167-1.

Ladon responded that HFS failed to establish its privity or knowledge or establish that a single alleged SOM violation amounts to a Rule 5 violation, improperly invoked the *Pennsylvania* Rule at on a fulsome evidentiary record, and erroneously relied on the invocation of the Fifth Amendment to fill evidentiary gaps. ECF No. 168. In support of its arguments, Ladon attaches: (1) excerpts from the

deposition of the MISS PEGGY's Captain, Mark Doyle, ECF No. 168-1; and (2) the transcript of the Court's July 26, 2024 hearing addressing HFS's motion to expedite depositions, ECF No. 168-2.

## II. THE SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party 'always bears the initial responsibility of informing the district court of the basis for its motion' and identifying the record evidence that 'it believes demonstrate[s] the absence of a genuine issue of material fact.'" *Trevino v. Allstate Vehicle & Prop. Ins. Co.*, No. 7:24-CV-00297, 2025 WL 2781742, at *2 (S.D. Tex. Sept. 30, 2025) (quoting *Celotex Corp.*, 477 U.S. at 323).

"[I]f the movant bears the burden of proof on an issue . . . , he must establish beyond peradventure *all* of the essential elements of the [claim or affirmative] defense to warrant judgment in his favor." *S&B INFRASTRUCTURE, LTD., v. FLUOR FEDERAL PETROLEUM OPERATIONS, LLC*, No. 3:25-CV-00011, 2026 WL 501581, at *3 (S.D. Tex. Feb. 5, 2026) (quoting *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011)). "Where the movant does not bear the burden of proof, his burden is satisfied by showing that the other party has a 'failure of proof on an essential element of its claim [or affirmative

defense].'" *Id.* (quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020)). "A party makes this showing by introducing evidence or by 'pointing out . . . an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 325). "If the [movant] succeeds on that showing, the burden shifts to the [nonmovant] to demonstrate that there *is* a genuine issue of material fact and that the evidence favoring the [nonmovant] permits a jury verdict in the [nonmovant]'s favor." *Id.* (quoting *Joseph*, 981 F.3d at 329). Summary judgment evidence "must be viewed in the light most favorable to the non-moving party, and reasonable inferences must be drawn in that party's favor." *Warren v. Fed. Nat'l Mortgage Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019).

## III. HFS'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.

"The Limitation of Liability Act generally limits a vessel owner's liability to the value of the vessel, post casualty, plus any pending freight. The limit is removed, however, if the negligence or unseaworthiness that caused the damage was within the 'privity or knowledge' of the owner." *Matter of Dredge Big Bear*, 525 F. Supp. 3d 731, 737–38 (M.D. La. 2021) (quoting *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 21 F. Supp. 3d 657, 752–53 (E.D. La. 2014)). Typically, "claimants bear the initial burden of proving that their injuries arose as a result of the owner's negligence or the vessel's unseaworthiness. Once this burden is met, the burden shifts to the owner to prove a lack of 'privity or

knowledge' of a negligent act or unseaworthy condition." *Id.* at 738 (quoting *Deepwater Horizon*, 21 F. Supp. 3d at 753).

"'[N]egligence is an actionable wrong under general maritime law,' and the elements of that tort are 'essentially the same as land-based negligence under the common law." *Marflet Marine, S. A. v. Everest Spirit Holding, LLC*, No. 2:23-CV-00262, 2025 WL 4089351, at *6 (S.D. Tex. Oct. 24, 2025), *adopted*, No. 2:23-CV-00262, 2026 WL 747182 (S.D. Tex. Mar. 17, 2026) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (citing *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005))). "To establish negligence under general maritime law there must be a[:] (1) duty; (2) breach of duty; (3) proximate cause; and (4) damages. *Id.* (quoting *Great Lakes Dredge & Dock*, 624 F.3d at 211).

HFS argues that the YANGZE 7 violated Rule 5, and because Rule 5 is designed to avoid collisions, the YANGZE 7's violation gives rise to the *Pennsylvania* Rule's presumption that the YANGZE 7's fault was a contributory cause of the collision. ECF No. 167 at 18. HFS continues that because this violation was within Ladon's privity or knowledge, Ladon is not entitled to exoneration or limitation of liability.

### *A. The* **Pennsylvania** *Rule's Presumption is Inapplicable.*

Admiralty courts have developed "a series of presumptions and burden-shifting principles that apply to issues that arise within the maritime jurisdiction."

*SRK Holdings, Inc. v. S. Towing Co.*, No. 3:20-CV-00110, 2021 WL 5587635, at *3 (S.D. Tex. Nov. 30, 2021), *adopted*, No. 3:20-CV-00110, 2022 WL 393573 (S.D. Tex. Feb. 9, 2022) (citing *Archer Daniels Midland, Co. v. M/T Am. Liberty*, 545 F. Supp. 3d 390, 403 (E.D. La. June 25, 2021)). "In cases involving a maritime collision or allision with resulting damage, the *Pennsylvania* Rule instructs that a party who violated a statutory rule intended to prevent the maritime accident is presumed to have caused the accident." *Marflet Marine*, 2025 WL 4089351, at * (citing *M/V Admiral Bulker v. United Bulk Terminals Davant*, 397 F.Supp.3d 826, 837 (E.D. La. 2019) (citing *Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1472 (5th Cir. 1991) and *Candies Towing Co. v. M/V B & C Eserman*, 673 F.2d 91, 93 (5th Cir. 1982) (The *Pennsylvania* Rule "constitutes an evidentiary rule reversing the burden of proof")); *see also SRK Holdings*, 2021 WL 5587635, at *3 ("The *Pennsylvania* rule is a 'burden-shifting presumption for causation when a vessel "at the time of a collision is in actual violation of a statutory rule intended to prevent collisions."'") (quoting *Mike Hooks Dredging Co., Inc. v. Marquette Transp. Gulf-Inland, L.L.C.*, 716 F.3d 886, 891 (5th Cir. 2013) (quoting *The Pennsylvania*, 86 U.S. 125, 136 (1873))).

The ship bears the burden of "showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." *Marflet Marine*, 2025 WL 4089351, at *8 (quoting *Archer Daniels Midland,*

*Co. v. M/T Am. Liberty*, 545 F. Supp. 3d 390, 403 (citing *The Pennsylvania*, 86 U.S. at 136)). "The *Pennsylvania* Rule concerns the burden of proof for showing causation; it does not determine ultimate liability for damages." *Id.* (quoting *Impala Terminals Burnside LLC v. Marquette Transp. Co., LLC*, No. 19-12584, 2021 WL 1123566, at *6 (E.D. La. Mar. 24, 2021) ("It places on the statutory violator the burden of showing that the violation could not have caused the accident.")). The *Pennsylvania* Rule "creates a presumption that one who violates a regulation intended to prevent collisions will be deemed responsible." *Id.* (quoting *Tokio Marine & Fire Ins. Co., Ltd. V. Flora MV*, 235 F.3d 963, 966 (5th Cir. 2001) ("[T]he *Pennsylvania* Rule applies only to violations of statutes that delineate a clear legal duty, not regulations that require judgment and assessment of a particular circumstance.")); *Reed v. Maersk Line, Ltd.*, No. 3:19-CV-00238, 2021 WL 1845162, at *4–5 (S.D. Tex. May 7, 2021) ("The rule thus creates a presumption that one who violates a regulation intended to prevent collisions will be deemed responsible.") (quoting *Mike Hooks Dredging Co.*, 716 F.3d at 891). But, the presumption is rebuttable and "applies only to violations of statutes that delineate a clear legal duty." *SRK Holdings*, 2021 WL 5587635, at *3 (quoting *Tokio Marine*, 235 F.3d at 966).

Rule 5 requires vessels to "at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances

and conditions . . . to make a full appraisal of the situation and of the risk of the collision." 33 C.F.R. § 83.05. HFS argues that YANGZE 7 violated Rule 5 by failing to follow its SOM because "the Captain did not post a deck officer on the bow of the vessel and did not post a designated look-out on the bridge," even though he "signed off on a checklist . . . that a look-out was posted on the bridge, when he knew that additional crewmembers to stand as look-outs were not in fact present on the bridge or bow." ECF No. 167 at 17. HFS explains that "there is no doubt that the YANGZE 7 was in violation of Rule 5" because: "(a) if the YANGZE 7 had seen the MISS PEGGY the VHF ship-to-ship radio recordings would have contained communications from the YANGZE 7 to arrange an overtaking of the MISS PEGGY, and, (b) the voice recordings from the YANGZE 7's bridge similarly would have contained discussions or awareness of any vessel traffic in the Houston Ship Channel—including the location and existence of the MISS PEGGY," and as the overtaking vessel, the YANGZE 7 was required to "keep out of the way of the vessel being overtaken, the MISS PEGGY," but did not. ECF No. 167 at 16–17 (cleaned up).

Ladon responds that HFS fails to demonstrate how a SOM violation equates to a violation of Rule 5 and therefore, the *Pennsylvania* Rule's presumption does not apply. ECF No. 168 at 3, 14. Ladon argues "[c]ompliance with Rule 5 is a factual[ly] intensive inquiry requiring among other things, an analysis of 'the prevailing

circumstances and conditions' including traffic density, the waterway, and the availability and proper utilization of electronic aids. HFS cannot shortcut that inquiry by substituting the Y7's SOM for Rule 5 itself." ECF No. 168 at 17. Ladon explains that the YANGZE 7's SOM is a product of its compliance with the ISM Code, "a regulatory and administrative compliance framework and does not establish liability for an alleged violation." ECF No. 168 at 14, 15. Ladon asserts that HFS cannot point to a SOM violation as a Rule 5 violation because: neither the ISM Code nor the SOM enlarge or add to a vessel's duty of reasonable care; the *Pennsylvania* Rule only applies to statutory violations and the SOM is not a statute; and "[v]essel owners should not be penalized for adopting and implementing safety systems that go beyond minimum legal requirements." ECF No. 168 at 14–17.

"Vessels 'must have constant and vigilant look-outs stationed in proper places on the vessel[ ] and charged with the duty for which look-outs are required.'" *Matter of Odfjell Chem. Tankers AS*, No. 3:20-CV-12, 2023 WL 12254063, at *8 (S.D. Tex. Jan. 24, 2023) (quoting *Chamberlain v. Ward*, 62 U.S. 548, 570 (1858)). "Lookouts must be 'persons of suitable experience, properly stationed on the vessel, and actually and vigilantly employed in the performance of the duty.'" *Id.* (quoting *Chamberlain*, 62 U.S. at 570).

Whether a vessel violated Rule 5 is largely dependent on the prevailing circumstances and conditions. *See* 33 C.F.R. § 83.05 ("at all times maintain a proper

look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions . . . to make a full appraisal of the situation and of the risk of the collision."); *see Odfjell Chem. Tankers AS*, 2023 WL 12254063, at *6, 8 (rejecting argument that posting a lookout on the bow who moved away from the bow briefly to protect his hearing from vessel's foghorn blasts amounted to Rule 5 violation where vessel also had virtual monitoring, but finding violation where other vessel did not have either a virtual lookout or lookout posted, failed to respond radio hails and danger signals) (collecting cases where other courts have found lookout conduct insufficient to satisfy Rule 5);[3] *Reed v. Maersk Line, Ltd.*, 649 F. Supp. 3d 428, 446–47 (S.D. Tex. 2023) (no violation of Rule 5 where "evidence show[ed] that the *Maersk Idaho* had a lookout posted on June 7," and Captain testified that he, another captain, and the lookout discussed a sailboat that came close to the *Maersk Idaho* prior to incident, leading the *Maersk Idaho* to blow her danger signal as a warning.").

Rather than describe fully what constituted maintaining an appropriate lookout under the prevailing circumstances and conditions during the incident, HFS

[3] *Chamberlain*, 62 U.S. at 571 (a lookout's view was obstructed by lights, rigging, or the vessel's spar); *Cliffs-Neddrill Turnkey Int'l-Oranjestad v. M/T Rich Duke*, 947 F.2d 83, 89 (3d Cir. 1991) (the man assigned a bridgewatch did not know he was supposed to keep a lookout); *Mar. & Mercantile Int'l L.L.C. v. United States*, No. 02-CV-1446 (KMK), 2007 WL 690094, at *21 (S.D.N.Y. Feb. 28, 2007) (the lookout was stationed in a wheelhouse 12 feet from the bow and managing other responsibilities); *In re G&G Shipping Co.*, 767 F. Supp. 398, 408 (D.P.R. 1991) (the lookout was allowed to leave the bridge for half an hour as a close-quarters situation was developing).

simply point to two violations of the SOM connected to the YANGZE 7's lookout requirements without tying them to Rule 5's requirements. HFS has not demonstrated that violating the SOM's requirements to designate a lookout on the bridgewing and post a deck officer on the bow equates to a violation of Rule 5's requirement to maintain a proper look-out under the specific circumstances present during the incident. The interrogatory answers referred to in HFS's motion indicate that during the incident, the Master, Second Officer, and an A/B were located on the bridge and assisted navigating the vessel.[4] ECF No. 167-1 at 49–51. The Bosun was also on duty, located at the bow, and serving as a lookout. ECF No. 167-1 at 49–51.[5] Nine other crewmen were on duty, but the interrogatory answers or other summary judgment evidence do not indicate where or what these individuals were doing during the incident. ECF No. 167-1 at 49–51.

HFS fails to explain how posting a lookout on the bow, but not also on the bridgewing[6] violates Rule 5. HFS similarly fails to explain how having a Bosun and not a deck officer serve as lookout on the bow amounted to failing to maintain a proper lookout under Rule 5. HFS does not discuss the circumstances or conditions

---

[4] It is unclear whether their assistance was to serve as lookout or not, but even assuming they did not serve as lookout, HFS has not sufficiently articulated a Rule 5 violation.

[5] HFS takes issue with the fact that the Bosun is not a deck officer. They have not otherwise argued that the Bosun was an insufficient lookout. *See* ECF No. 167.

[6] It is unclear from the interrogatory answers if any of the three crewmen on the bridge were not located on the bridgewing and assisting navigation by serving as lookout. *See* ECF No. 167-1 at 49–51.

during the incident, much less how under such conditions, the absence of a deck officer as lookout on the bow and crewmember as lookout on the bridgewing amounted to failing to maintain a sufficient lookout during the incident. In sum, HFS failed to connect how these SOM violations also equate to a failure to maintain a proper lookout under Rule 5.

This is insufficient to establish a violation of Rule 5 sufficient for the Court to presume the YANGZE 7's contributory cause. Rather, the record demonstrates that there is a genuine issue of material fact as to whether the YANGZE 7 violated Rule 5's lookout requirements. Because HFS did not demonstrate that YANGZE 7 violated Rule 5, the *Pennsylvania* Rule's presumption does not apply. *See Pabtex, Inc. v. Marquette Transp. Co., LLC*, No. 1:16-CV-143, 2017 WL 6887053, at *5, 7 (E.D. Tex. Dec. 19, 2017), *adopted*, No. 1:16-CV-143, 2018 WL 356309 (E.D. Tex. Jan. 9, 2018) (refusing to apply the *Pennsylvania* Rule's presumption where evidence sufficiently created a genuine issue of material fact as to Rule 5 violation—record showed testimony that crewman radioed the *Comanche* and his own crew to advise as to visibility and whether the vessel was moving, attempted to move his vessel into a safer place, and relied on his charts and radar to assess the position of the *Randy Eckstein* as he approached the Dock and took on tow).

Ladon also argues that the *Pennsylvania* Rule's presumption is superfluous because the evidentiary record is fully developed and the presumption applies to

both vessels as the MISS PEGGY's Captain also failed to maintain a proper look-out by never looking astern, using radar, monitoring AIS, or using the RosePoint electronic chart system. ECF No. 168 at 4, 17–18. "[W]ith the record now developed, the *Pennsylvania* Rule's evidentiary presumption has run its course." ECF No. 168 at 18 (internal quotation marks omitted). HFS argues that Ladon cannot make this argument in a response and should have filed its own motion for summary judgment. ECF No. 169 at 1–2.[7]

Indeed, "evidentiary presumptions . . . are designed to fill a vacuum," and so the *Pennsylvania* Rule is inapplicable where the parties "have introduced evidence to dispel the mysteries that gave rise to the presumptions." *Marflet Marine*, 2025 WL 4089351, at *8 (quoting *Parish v. Lafarge N. America, Inc.*, No. 11-2350, 2016 WL 5390381, at *4 (E.D. La. Sept. 27, 2016); (citing *M/V Admiral Bulker*, 397 F.Supp.3d at 837). "With the presence of evidence in the record, 'the need for presumptions evaporates.'" *Id.* (quoting *Lafarge N. America, Inc.*, 2016 WL 5390381, at *4; (citing *Slatten LLC v. Royal Caribbean Cruises, Ltd.*, No. 13-673, 2014 WL 5500701, at *4 (E.D. La. Oct. 30, 2014)); *see also Impala Terminals Burnside LLC*, 2021 WL 1123566, at *7 ("Because these evidentiary presumptions

[7] The Court disagrees. Ladon does not raise the issue of HFS's potential liability to seek summary judgment relief, but instead to demonstrate that application of the *Pennsylvania* Rule to the current record is inappropriate—rather that rely on a presumption, these issues should be decided after a bench trial where both Ladon and HFS present competing evidence.

are rendered superfluous on a fulsome record, the Court finds it is inappropriate to apply them here. And because genuine issues of material fact concerning comparative negligence and causation are evident, partial summary judgment is not warranted.”).

Here, the briefing demonstrates that “[b]oth parties possess and intend to introduce evidence relevant to fault and causation . . . [and] the record appears to contain sufficient evidence from both parties concerning causation and fault, thus rendering [the] presumption[] under . . . the *Pennsylvania* Rule unnecessary.” *Marflet Marine*, 2025 WL 4089351, at *8 (“Buckeye’s Motion be denied as liability, fault-apportionment, causation and damages are more appropriately considered after a bench trial where both sides submit competing evidence relevant to fault and causation rendering indulging presumptions unnecessary.”) (cleaned up) (quoting *Lafarge N. America, Inc.*, 2016 WL 5390381, at *5) (Finding the application of these Rules would be “superfluous” where there is an “abundance of relevant evidence currently in the record,” noting “courts in this Circuit have previously refused to apply such presumptions when there is relevant evidence in the record.”)); *SRK Holdings*, 2021 WL 5587635, at *4 (“I am extremely reluctant to decide the outcome of an admiralty case based solely on rebuttable presumptions, especially when, as here, a substantial evidentiary record exists.”) (citing *Reed*, 2021 WL 1845162, at *5). A “singular focus on evidentiary presumptions elevates form over substance

[and] common sense." *Id.* (quoting *Impala Terminals Burnside LLC*, 2021 WL 1123566, at *9).

In the instant case, there are genuine issues of material fact as to whether Petitioners were negligent and caused injury to Claimants—these are issues that should be decided after both Petitioners have a full and fair opportunity to present witnesses and evidence at a bench trial. *See SRK Holdings*, 2021 WL 5587635, at *4. Summary judgment should not be granted on this issue. *See Reed*, 2021 WL 1845162, at *5 ("Instead of determining at this stage of the proceedings whether a rebuttable presumption should apply, the more reasoned approach would be to give both parties a full opportunity to present witnesses and evidence at trial. Once that takes place, the Court will be in a much better position to judge what presumptions, if any, are appropriate. This approach is consistent with how many courts across the country handle motions requesting the application of the *Pennsylvania* rule before trial.") (citing *M/V Admiral Bulker*, 397 F. Supp. 3d at 837 ("declin[ing] to apply the presumptions in resolving the motions for summary judgment"); *McLean v. Carnival Corp.*, No. 12-24295-CIV, 2013 WL 1024257, at *5 (S.D. Fla. Mar. 14, 2013) (application of the *Pennsylvania* rule "is more properly considered at a later stage of the proceedings"); *Scouten v. NCL (Bahamas) Ltd.*, No. 08-21485-CIV-MORENO, 2009 WL 10692716, at *2 (S.D. Fla. Mar. 4, 2009) (application of the *Pennsylvania* rule before trial is premature)).

### *B. There is a Genuine Issue of Material Fact Concerning Ladon's Privity and/or Knowledge.*

"Especially for purposes of considering a motion for summary judgment, it is important to emphasize that 'the question of whether [a vessel owner] lacked privity or knowledge, and thus may limit its liability, is fact-specific. . ." and "'must turn on the facts of the individual case.'" *Matter of Dredge Big Bear*, 525 F. Supp. 3d at 738 (quoting *In re Omega Protein, Inc.*, 548 F.3d 361, 372 (5th Cir. 2008); *ADM Int'l SARL v. River Ventures, LLC*, 441 F. Supp. 3d 364, 381 (E.D.La. 2020)). "Privity or knowledge exists where the owner has actual knowledge or could have and should have obtained the necessary information by reasonable inquiry or inspection. . . . a 'reasonable man' test." *In re Int'l Marine, LLC,* 614 F.Supp.2d 733, 740 (E.D.La. 2009). HFS relies upon 46 U.S.C. § 30524(e) to establish Ladon's privity and/or knowledge: "[i]n a claim for personal injury or death, the privity or knowledge of the master or the owner's superintendent or managing agent, at or before the beginning of each voyage, is imputed to the owner." 46 U.S.C. § 30524(e).

HFS argues that "Ladon had privity and knowledge, through the master, of the YANGZE 7's negligent act of failing to maintain a proper look-out in accordance with the Inland Navigational Rules and the SOM leading to the collision with the MISS PEGGY." ECF No. 167 at 14.[8] HFS argues that the "[t]he owners and

[8] HFS explains that because the YANGZE 7's deck logbook listed the day before the incident as

operators of the YANGZE 7 knew or should have known that the bridge and bow were not properly manned to maintain a proper look-out" because the arrival checklist demonstrates that the Captain knew additional look-outs should have been, but were not posted and the Captain's invocation of the Fifth Amendment during his deposition gives rise to an adverse inference that the YANGZE 7 had insufficient crew to maintain a proper look-out. ECF No. 167 at 20, 21.

Ladon responds that HFS fails to establish Ladon's privity or knowledge of any negligent acts because there is no evidence of what Ladon's managing agents actually knew or should have known and HFS instead "asks the Court to infer the rest from the [YANGZE 7] crewmembers' Fifth Amendment invocations," but any adverse inference from invoking the Fifth Amendment, which the witnesses did in fear of HFS's representation that the Coast Guard was considering a criminal referral,[9] cannot fill evidentiary gaps. ECF No. 168 at 3, 12–13.

"'[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered

---

Voyage No. 2456 and the day of the incident as Voyage 2457, "on the morning of the Incident, the YANGZE 7 began a new voyage," and therefore, the Captain's knowledge is imputed to Ladon—"[a]long with the YANGZE 7's navigational checklists, and risk assessment forms completed prior to the YANGZE 7's transit in the HSC, the Captain knew at the inception of the voyage—just mere hours before the Incident—that a proper lookout was not being maintained aboard the YANGZE 7." ECF No. 169 at 8.

[9] HFS objects to any insinuation that it mentioned a possible criminal referral from the Coast Guard to provoke the witnesses to invoke their Fifth Amendment right and then use their invocation as means to procure an adverse inference. ECF No. 169. To be clear, the Court does not find that HFS's mention of potential criminal charges was strategic or unfounded.

against them.'" *Parker v. State Farm Mut. Ins. Co.*, No. 3:23-CV-00139, 2024 WL 1855426, at *2 (S.D. Tex. Apr. 29, 2024) (quoting *Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008) (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976))). But, "[t]he assertion of the [Fifth Amendment] privilege, particularly on the advice of counsel, is an ambiguous response . . . ." *A.F. by & through J.F. v. St. Tammany Par. Sch. Bd.*, No. CV 23-7426, 2025 WL 1220805, at *4 (E.D. La. Apr. 28, 2025) (quoting *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210–11 (5th Cir. 1983)); *see also In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 962 (S.D. Tex. 2010). "The fact that a witness invokes the Fifth Amendment may be probative of the conduct and intentions of that witness." *Fed. Land Bank Ass'n of S. Alabama, FLCA v. H&H Worldwide Fin. Serv., Inc.*, No. CV H-07-2832, 2009 WL 10693621, at *6 (S.D. Tex. Mar. 19, 2009), *aff'd sub nom. Fed. Land Bank Ass'n of S. Alabama, FLCA v. H & H Worldwide Fin. Serv., Inc.*, 354 F. App'x 85 (5th Cir. 2009) (citing *In re Powers*, 261 F App'x 719, 723 (5th Cir. 2008)).

The Fifth Circuit has "limited the value of the negative inference by recognizing that a party seeking summary judgment cannot rely solely on the other party's exercise of his fifth amendment rights." *In re Enron*, 762 F. Supp. 2d at 962 (quoting *State Farm Life Ins. v. Gutterman,* 896 F.2d 116, 119 n. 3 (5th Cir. 1990) (citing *United States v. White,* 589 F.2d 1283, 1287 (5th Cir.1979) ("[A] grant of summary judgment merely because of the invocation of the fifth amendment would

unduly penalize the employment of the privilege.”))); *see also Sec. & Exch. Comm’n v. Blackburn*, 431 F. Supp. 3d 774, 813 (E.D. La. 2019), *aff’d*, 15 F.4th 676 (5th Cir. 2021) (“While an adverse inference may be recognized at the summary judgment stage, the movant may not rely solely on the other party’s exercise of his Fifth Amendment rights to carry its burden.”) (citing *Gutterman*, 896 F.2d at 119 n.3).

Importantly, “[w]hile an adverse inference may be drawn in a civil case when a party asserts his Fifth Amendment privilege, the trier of fact is not required to draw a negative inference.” *In re Enron*, 762 F. Supp. 2d at 962 (citing *Baxter,* 425 U.S. at 318 (“[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.”); (citing *Daniels v. Pipefitters’ Ass’n Local Union No. 597,* 983 F.2d 800, 802 (7th Cir. 1992) (“The inference is permissible, but not required.”); 8 Wright, Miller and Marcus, *Federal Practice & Procedure* § 2018 n. 63 (3d ed. 2004)).

Here, the Court will not draw an adverse inference on the basis of the crew’s invocation of their Fifth Amendment rights. At several points in the emergency hearing before the Court, counsel for HFS asserted that “the Coast Guard made it clear . . . that there is the possibility of a criminal referral in this matter.” ECF No. 39 at 12:10–13, 20:17–19, 21:1–7. Ladon explains that their foreign crewmen invoked the right on advice of independent criminal counsel in light of the potential

criminal investigation, which the Court finds reasonable under the circumstances. Furthermore, the Court's order following the hearing stated that "the depositions are for the purpose of perpetuating evidence and shall not prejudice any party's right to seek a more complete deposition of any of the deponents later," ECF No. 41 at 3, but there is no indication that HFS sought to take the Captain's deposition at a later date when the threat of criminal liability dissipated.[10]

Without drawing an adverse inference, there is insufficient evidence before the Court demonstrating the Captain's knowledge under § 30524(e). HFS proffers documentary evidence in support of their argument that the Captain knew or should have known that the bridgewing and bow were not properly manned to maintain a proper lookout: pages from YANGZE 7's SOM listing these lookout requirements and checkmark next to " Bridge appropriately manned to: maintain a proper lookout" on the arrival checklist. ECF No. 167 at 20 (citing ECF No. 167-1 at 6, 26, 28). Looking at the pages of arrival checklists, ECF No. 167-1 at 28–40, there is no indication whether the Captain's checkmark next to "maintain a proper lookout" was reasonable under the circumstances, the result of a misunderstanding, an intentional falsehood, or a scrivener's error. A checkmark does not give the Court sufficient insight into the Captain's privity or knowledge before or at the beginning of the

[10] To be clear, should the witness continue to invoke his Fifth Amendment right at trial now that no criminal investigation remains, then Judge Eskridge may find differently, but on the current record, the Court declines to draw a negative inference.

voyage.[11] Summary judgment is not appropriate on this issue. A question of fact remains as to whether Ladon had privity or knowledge.

## IV. CONCLUSION

The Court **RECOMMENDS** that HFS's motion for summary judgment be **DENIED**. ECF No. 167.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on July 3, 2026.

Dena Palermo

**Dena Hanovice Palermo**
**United States Magistrate Judge**

[11] As noted above, "[i]n a claim for personal injury or death, the privity or knowledge of the master or the owner's superintendent or managing agent, at or before the beginning of each voyage, is imputed to the owner." As an aside, the Court is unconvinced that the two logbook entries with different voyage numbers from one day apart and relied upon by HFS for the first time in its reply, establish that this period of time marked the beginning of a voyage, as contemplated by § 30524(e). Even so, that record does not demonstrate a genuine issue of material fact as to whether the Captain had knowledge of the negligent acts at the beginning of the voyage.