**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HOUSTON FLEETING SERVICES LLC**<br><br>**VERSUS**<br><br>**M/V YANGZE 7, her engines, tackle, apparel, bunkers, etc., in rem; Ladon Shipping Pte. Ltd.; Yangzijiang Shipping Pte. Ltd.; Shanghai Run Yuan Shipping Management Co., Ltd.** | **§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§** | **IN ADMIRALTY**<br><br>**Case No. 4:24-cv-2705 c/w Case No. 4:24-cv-2739; Case No. 4:24-cv-2759; and Case No. 4:24-cv-2855** |

**OPPOSITION TO NON-PARTY CAPT. LIU TAO AND LADON SHIPPING PTE. LTD'S MOTION FOR AN ORDER (1) PERMITTING CAPT. LIU TAO TO WITHDRAW HIS ASSERTION OF THE FIFTH AMENDMENT PRIVILEGE, (2) GRANTING LADON LEAVE TO PRESENT CAPT. LIU TAO FOR A FURTHER DEPOSITION, AND (3) DIRECTING THAT THE DEPOSITION PROCEED BY VIDEO CONFERENCE**

On July 19, 2024, while transiting the Houston Ship Channel, the YANGZE 7, a bulk carrier owned by Ladon Shipping Pte. Ltd. ("Ladon"), ran over the MISS PEGGY, a tug boat owned and operated by Houston Fleeting Services ("HFS"). The collision caused the MISS PEGGY to capsize and sink, resulting in the tragic death of one MISS PEGGY crewmember and injuries to the others (the "Incident"). HFS immediately sought to depose the YANGZE crew before the ship left the United States, which, over Ladon's objection, this Court permitted. Each of the YANGZE crewmembers, however, including Capt. Liu Tao, invoked the Fifth Amendment, refusing to provide any substantive testimony regarding the Incident.

Over the last two years, the parties have diligently developed the evidence and their litigation strategies, proceeding through discovery, presenting expert materials, filing dispositive motions, and preparing for trial—all without any substantive testimony from the YANGZE crew. Discovery has been closed for months, and the case came before this Court for docket call on August 17, 2026. The case is ready to be tried, and the parties are ready to try it. Yet now, at the eleventh hour and after all the parties' cards are on the table, Ladon seeks to delay their day in Court and upend years of preparations by allowing Capt. Liu Tao to withdraw his prior Fifth Amendment invocation and testify substantively at a deposition and trial. Granting Ladon's request would require the parties—both HFS and the claimants—to essentially start over after they have diligently prepared their claims and defenses for the last two years. It would reward one party's gamesmanship to the detriment of all of the others.[1] It should be denied.

If, however, Ladon's request for a deposition of Capt. Liu Tao is granted, the resulting prejudice to the remaining parties requires that the deposition proceed in-person in Houston at Ladon's cost. Capt. Liu Tao is not exempt from the general rule that a plaintiff's agents and employees must appear for deposition in the district where they filed suit. Moreover, as a key witness whose testimony has been

---

[1] Notably, the same insurer who is defending Ladon also selected and is paying Capt. Liu Tao's criminal counsel.

unilaterally withheld until now, the parties are entitled to observe and assess his credibility in person. If Capt. Liu Tao's testimony is allowed at trial (which HFS contests), his deposition must be held in person where that trial will take place.

# I. LAW AND ARGUMENT

## A. Allowing Capt. Liu Tao to withdraw his Fifth Amendment invocation would significantly prejudice the parties at this late stage of the litigation.

In *Davis-Lynch, Inc. v. Moreno*, the Fifth Circuit explained that "withdrawing the Fifth Amendment at a late stage places the opposing party at a significant disadvantage because of increased costs, delays, and the need for a new investigation." 667 F.3d 539, 548 (5th Cir. 2012). While it may be permitted in certain instances, the movant must show that the withdrawal is not "an attempt to abuse the system or gain an unfair advantage" and will not cause "undue prejudice" to the opposing party. *Id.* at 548, 549. Ladon cannot make that showing here.

As the Fifth Circuit recognized: "The timing and circumstances under which a litigant withdraws the privilege are relevant factors in considering whether a litigant is attempting to abuse or gain some unfair advantage." *Id.* at 547. There, the court was considering withdrawals made by two defendants (Moreno and Pucek) while discovery was still ongoing and dispositive motions were pending. The Fifth Circuit concluded that because Moreno waived his privilege "more than a month before the discovery deadline," he should have been permitted to do so. *Id.* at 548-

549. On the other hand, the court considered Pucek's withdrawal with only "five days left in the discovery period" to be an "eleventh-hour withdrawal" that was "more likely to be an attempt to abuse the system or gain an unfair advantage." *Id.* at 549. Indeed:

> In withdrawing the privilege at such a late stage, Pucek withheld information that Davis-Lynch could have used in his investigation, only to provide information at the last moment, leaving Davis-Lynch at a disadvantage. Unlike the situation as to Moreno, Davis-Lynch had less than a week to depose Pucek before the close of the discovery period. Given Pucek's eleventh-hour withdrawal of his Fifth Amendment privilege and the cost and delay that Davis-Lynch would incur as a result, we are satisfied that the district court did not abuse its discretion in denying Pucek's withdrawal, and we affirm that denial.

*Id.*

The timing of Capt. Liu Tao's attempted withdrawal is even more egregious than Pucek's. Discovery in this case has been closed for months. *See White v. Chicago*, No. 17-C-2877, 2024 WL 4818436, at *3 (N.D. Ill. Nov. 18, 2024) (withdrawals of the Fifth Amendment privilege are "particularly suspect" when a party waits "until after discovery closed."). Expert reports have been exchanged. Dispositive motions have been filed and denied. The case is, and for months has been, ready for trial. If Ladon's request is granted, Ladon and Capt. Liu Tao will have the benefit of seeing everyone else's cards, and those parties will be forced to retool their positions based on key substantive testimony of which they were

deprived ***for years***. *Id.* ("Moreover, by attempting to withdraw the assertion at such a late stage in the case, Mohammed in effect asks the Court to saddle White with critical strategic disadvantages. After proceeding for six years around Mohammed's Fifth Amendment invocation, White now faces the prospect of needing to completely retool his litigation strategy. *See Certain Real Props.*, 55 F.3d at 84 (court should deny leave to withdraw Fifth Amendment privilege when moving party does so to 'abuse, manipulate or gain an unfair strategic advantage over opposing parties.')."). 

Ladon's allegations regarding the status of potential criminal prosecution are equally incorrect and unavailing. First, Ladon's claim that a potential criminal investigation was "alleged only by HFS" (Dkt. 218, p. 11) ignores that the United States Coast Guard's Criminal Division and Investigative Service have been involved with this incident from the outset, which is entirely expected when a fatality occurs. In the days following the incident, representatives of these entities attended crew interviews—a fact of which Ladon's counsel is well aware since they also attended those interviews and met with the Coast Guard's criminal investigators.

Second, to HFS's knowledge, the threat of criminal investigation remains pending. To date, the USCG has yet to conclude its investigation and issue its report regarding the Incident. In fact, two of the other initially deposed crewmembers of the YANGZE remain unavailable for deposition or trial because, on the advice of

their independent criminal counsel, they choose to continue to invoke their Fifth Amendment privilege. As courts have held: "counsel's subjective determination that prosecution became unlikely [at a certain time] does not establish a good faith basis for attempting [to withdraw a privilege assertion]: 'requesting leave late in the process [does] not justify granting leave so late in the game.'" *White*, 2024 WL 4818436, at *3 (quoting *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009)).

Here, other than the passage of time, Ladon fails to offer any basis on which to conclude that there will be no criminal prosecution.[2] Without a recently discovered basis for this conclusion, "counsel's subjective determination" is insufficient to justify Capt. Liu Tao's last-minute withdrawal. This could—and should—have been done over a year ago while discovery was still in its early stages.

There is simply no good faith justification for Capt. Liu Tao to wait over two years—after discovery was completed and the case was ready for trial—to seek to withdraw his Fifth Amendment invocation. The prejudice to the other parties that will result from condoning his delay is undeniable. The parties, not merely HFS but also the claimants and their families, have been diligently preparing their cases and patiently waiting for their day in Court. They will now be forced to start over, to

[2] In the case of the M/V DALI's allision with the Francis Scott Key Bridge in Baltimore, Maryland, for example, criminal indictments were unsealed more than two years after the incident occurred.

retool their strategies, reopen discovery, redo expert reports and dispositive motions, all to account for the eleventh-hour substantive testimony of a key witness that is now inexplicably available to testify. In other words, the eleven depositions that have been taken and numerous motions that have been filed were all for naught, as they all relied on the absence of substantive testimony from Capt. Liu Tao. This is the quintessential example of "gaming the system" that the Fifth Circuit has warned against. *See Davis-Lynch*, 667 F.3d at 549 (affirming the denial of an "eleventh-hour withdrawal" of a Fifth Amendment privilege invocation after considering the "cost and delay that [the other party] would incur as a result"). The instant motion should likewise be denied in its entirety.

**B. If Capt. Liu Tao is permitted to testify, his deposition must take place in Houston, Texas.**

Ladon's request for Capt. Liu Tao to appear for deposition by remote videoconference rather than in person is the ultimate example of a party wanting to have its cake and eat it too. If allowed to testify, Capt. Liu Tao will be deposed *after* discovery has closed, expert reports have been exchanged, dispositive motions have been filed, and trial is imminent. Ladon will have the benefit of seeing the other parties' trial strategies, yet at the same time wants to deprive those parties of an in-person deposition of a key witness whose testimony has been unavailable to them for years. Even more, Ladon wants Capt. Liu Tao to provide substantive testimony in this litigation—which is based on his own tortious conduct that resulted in a

fatality and other injuries—yet maintain that he "does not submit to the jurisdiction of this Court for any other purpose, waive any defense, or consent to suit." Dkt. 218, p. 5. Put another way, after seeing the other parties' positions, Ladon now wants Capt. Liu Tao to provide his own belated account of what happened in this case, but only through a video screen, so he can remain free from any repercussions of his testimony in the United States. If that does not constitute an "abuse of the system," it is unclear what would.

Apart from the well-accepted principle that one must take the good with bad, several other reasons mandate that Capt. Liu Tao's deposition be held in Houston, Texas. First, in cases that have allowed late privilege withdrawals, courts have consistently recognized that it is the party proposing the withdrawal who created "a serious problem," and appropriate relief must be granted to alleviate the resulting prejudice to the opposing parties. In *In re Capacitors Antitrust Litigation*, for example, the court held that the defendants' witnesses—who were located in Japan—could withdraw their prior privilege assertions and testify at trial "only if they are made available for deposition by the [opposing parties] at a time and location ***in the United States*** at the [opposing parties'] convenience." No. 14-cv-03264, 2020 WL 13985044, at *2 (N.D. Cal. Jan. 15, 2020) (emphasis added). The court further held:

> Because defendants caused this situation, they are ordered to pay all of the fees and costs associated with the depositions, including court reporter, videographer, and interpreter expenses. Defendants are also ordered to pay the reasonable attorney's fees and costs for one lawyer representing the [opposing parties] to take each deposition. A witness not made available on these conditions may not withdraw the privilege assertion or testify at trial.

*Id.*; *see also United Healthcare Servs., Inc. v. Mortazavi*, No. 3:21-cv-1547, 2026 WL 2076020, at *6 (N.D. Tex. July 16, 2026) (allowing the defendant to withdraw his prior privilege assertion, but ordering him to pay all reasonable costs and attorney's fees associated with both his original deposition and a renewed deposition, as well as any additional attendant discovery).[3]

Second, requiring Capt. Liu Tao to come to Houston for his deposition is consistent with the general rule that plaintiffs (and their agents and employees) must make themselves available for deposition in the district in which they brought suit. *See* 8A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice & Procedure* § 2112 (3d ed.) (hereafter "Wright & Miller"); 1 Discovery Proceedings in Federal Court § 9.4 (3d ed.); *Detweiler Bros., Inc. v. John Graham & Co.,* 412 F. Supp. 416, 422 (E.D. Wash. 1976) ("As a normal rule plaintiff will be required to make himself available for examination in the

[3] In *In re Capacitors Antitrust Litigation*, the court deferred ruling on whether expert reports and pending motions could be revised, as well as whether an adverse inference from the prior invocation would be applied, until after the depositions were taken. 2020 WL 13985044, at *2.

district in which he has brought suit . . . . This rule would also apply to plaintiff's agents and employees."). Because Ladon filed suit in this district and seeks to offer Capt. Liu Tao's testimony at trial in this district, Capt. Liu Tao must also appear for deposition in this district. *See Moore v. EO Products LLC*, No. 22-7618, 2024 WL 4441488, at *2 (N.D. Cal. Oct. 8, 2024) (requiring plaintiff to appear for deposition in district where suit was filed and where testimony would be presented).

Third, any risk that the deposition may be restricted by legal and procedural requirements of a foreign country also weighs in favor of conducting the deposition in the United States. *See In re Vitamin Antitrust Litigation*, No. 99-197, 2001 WL 35814436, at *6-10 (D.D.C. Sept. 11, 2001) (declining to accept counsel's representation that Federal Rules depositions could proceed without incident abroad).

Finally, the parties have "a legitimate reason to conduct the deposition in person and best assess [Capt. Liu Tao's] credibility." *Crosson v. TMF Health Quality Institute*, No. 23-321, 2024 WL 7021213, at *2 (W.D. Tex. Sept. 4, 2024). "Courts historically recognize that live testimony is far superior to video or telephone testimony, and counsel's ability to observe a party as he or she answers questions is an important aspect of discovery that should not be modified except in cases of extreme hardship." *Id.* (quoting *G.K. v. D.M.*, No. 21-2242, 2014 WL 1801907, at *3 (E.D. La. Apr. 25, 2024)). Courts are additionally unwilling to permit

remote depositions "in instances where the testimony is key to the issues presented and the case has been subject to multiple discovery disputes." *Buergofol GmbH v. Omega Liner Co., Inc.*, No. 22-4112, 2024 WL 4290795, at *3 (D.S.D. Sept. 25, 2024) (quoting *Edwards v. Thomas*, 2021 WL 8316970, at *2 (W.D. Ark. Nov. 18, 2021)).

Capt. Liu Tao is an important witness who, after maintaining his Fifth Amendment privilege for over two years of litigation, has now decided to provide substantive testimony. If this blatant litigation tactic is permitted, at the very least, the parties are entitled to conduct an in-person deposition of Capt. Liu Tao where this lawsuit is—and has been—pending for years, at Ladon's cost.

## II. CONCLUSION

Ladon and Capt. Liu Tao's eleventh-hour gamesmanship should not be condoned. Considering the advanced stage of this litigation and the significant disadvantage, costs, and delays that will burden the other parties, the request for withdrawal of Capt. Liu Tao's Fifth Amendment invocation should be denied. If allowed, however, the requested deposition should take place in Houston, Texas, at Ladon's cost, and HFS reserves the right to seek to have the previously expired deadlines for discovery, expert reports, and motion practice reset, and to re-urge whether an adverse inference based on Capt. Liu Tao's prior Fifth Amendment invocation is appropriate.

Respectfully submitted,

<u>*/s/ David L. Reisman* (by permission)</u>
David L. Reisman
Attorney in Charge
State Bar No.24039691
Federal ID No. 3591037
LISKOW & LEWIS
Hancock Whitney Center
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Fax No. (504) 556-4108
E-mail: dreisman@liskow.com

**ATTORNEY FOR HOUSTON FLEETING SERVICES LLC**

**<u>OF COUNSEL:</u>**

**LISKOW & LEWIS**
Michael A. Golemi
State Bar No. 24047536
Fed. ID No. 559843
Jonas S. Patzwall
State Bar No. 24122915
Fed. ID No. 3712905
Elizabeth A. Strunk
State Bar No. 24047536
Fed. ID No. 3865286
1001 Fannin Street, Ste. 1800
Houston, TX 77002
Telephone: (713) 651-2900
Facsimile: (701) 651-2908
Email: magolemi@liskow.com
Email: jspatzwall@liskow.com
Email: eastrunk@liskow.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon all counsel of record by electronic mail and/or by the CM/ECF system this 21st day of October, 2026.

*/s/ Elizabeth A. Strunk*
Elizabeth A. Strunk

## CERTIFICATE OF WORD COUNT

I certify that this motion contains 2,719 words, in compliance with the Local Civil Rules and the Court Procedures of the Honorable Charles R. Eskridge III.

*/s/ Elizabeth A. Strunk*
Elizabeth A. Strunk